SUE KLAU ENTERPRISES, INC.,
Plaintiff-Appellant,

v.

AMERICAN FIDELITY FIRE
INSURANCE COMPANY,
Defendant-Appellee.

No. 76–1143.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1977.

Decided April 6, 1977.

Eric A. Tulla, Hato Rey, P. R., with whom O'Neill & Borges, Hato Rey, P. R., was on brief, for plaintiff-appellant.

Victor R. Gonzalez-Mangual, Hato Rey, P. R., with whom Rua, Mercado & Gonzalez, Hato Rey, P. R., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, VAN OOSTERHOUT *, Senior Circuit Judge, and CAMPBELL, Circuit Judge.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an appeal by plaintiff Sue Klau Enterprises, Inc., from a judgment dismissing its complaint for enforcement of an award made by architect Carlos de la Uz Arenal pursuant to the provisions of a building construction contract against defendant American Fidelity Fire Insurance Company. Jurisdiction in the trial court, based on diversity of citizenship and the jurisdictional amount under 28 U.S.C. § 1332, is established.

A rather extensive statement of the factual and legal background appears to be desirable. Edil Construction, Inc., (Edil) entered into a contract to construct an apartment building for plaintiff in Santurce, Puerto Rico. The contract is based on American Institute of Architects Standard Form A-201.

Defendant in its brief admits that it issued to plaintiff material, labor and performance bonds which are in full force and effect and which incorporate the construction contract by reference, and that such bonds obligate it for the faithful performance by Edil of its obligations under the building contract.

Defendant also admits that Edil defaulted in the performance of the contract, that plaintiff elected to complete the project pursuant to paragraph 7.6.1 of the contract, and that plaintiff by letters of April 4, 1973, so notified both Edil and defendant bonding company.

Plaintiff completed the building project and on July 25, 1973, sent a letter to the bonding company containing an itemized claim of damages due it by reason of Edil's default and demanding payment under the contract and bonds for its completion expenditures and for delay in construction caused by Edil's default. Defendant admits that it has refused to make payment.

By letter dated December 11, 1973, to architect de la Uz, plaintiff requested determination by the architect that the amounts expended by plaintiff as itemized in its July 25 letter for the completion of the building were due under the contract and defendant's bonds. Said letter requested the architect's decision on the amount due by reason of the contractor's default, pursuant to paragraphs 2.2.6 et seq. of the contract which provide in substance that claims and disputes arising under the contract shall be initially referred to the architect for decision which shall be made in writing.

The architect sent to defendant a copy of plaintiff's letter requesting the architect's determination of the amount due under the contract and a letter advising that a meeting would be held at 9:00 a. m. on February 22, 1974, at a place specified, for the purpose of making the determination requested. Such letter concluded by saying: "It is my intention to give an impartial opinion on this matter, for which reason you will appreciate how important this meeting will be." Defendant admits the receipt of such letters on February 15, 1974.

The architect, by deposition, testified that a number of meetings were held with the interested parties and that the defendant was represented at several such meetings. On cross examination he testified:

    Q Did you call the parties and then give them a chance to refute the evidence that was there?

A Yes, I would say so, I called a meeting, and after several postponements, I remember now, we finally got together, and this letter was reviewed in this meeting, as I see it I gave a chance to everybody to talk about the letter and refute it or do whatever had to be done on this letter. That's my opinion.

Q Do you know what an arbiter is? What is your opinion of what an arbiter is?

A I think it is a person who would act as a judge would in a matter in dispute between two parties.

Q Do you think it's important that the parties know that they are actually in arbitration proceedings?

A Of course I would say that.

The letter referred to is plaintiff's demand letter heretofore referred to.

The architect by letter dated April 10, 1974, supplemented by letter dated August 13, 1974, allowed many of plaintiff's claims but rejected some of them and awarded plaintiff $67,516.06. The August 13 letter stated: "This decision is rendered pursuant to the construction agreement and is final but subject to appeal."

Part 7.10 of the contract contains provisions for additional arbitration. Paragraph 7.10.1 provides: "All claims [with certain exceptions not here relevant] shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining."

Paragraph 7.10.2 in pertinent part reads:

Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11 where applicable, . . . "

Paragraph 2.2.11 provides in turn:

If a decision of the Architect is made in writing and states that it is final but subject to appeal, no demand for arbitration of a claim . . . covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision. The failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor.

No notice of demand for arbitration was given by the defendant within thirty days from the architect's final decision as required by paragraph 2.2.11. By letter dated September 17, 1974, plaintiff demanded payment of $67,516.06 determined due by the architect. No payment was made. Plaintiff then commenced this action to enforce the architect's award.

Defendant by answer made admissions, as set out in the statement of facts, *supra*, and generally denied the allegations asserting its liability. By way of affirmative defense, defendant pleaded that it had never appeared in a meeting for the purpose of issuing an arbitration award and specifically refused to do so, that the architect was not accepted by the defendant, that this information was communicated to the architect, and that, although a meeting was held for the purpose of obtaining information from the plaintiff, the defendant does not accept the letters of April 10 and August 13, 1974, as an award. Defendant also pleaded that the plaintiff failed to produce any evidence during the hearings before the architect, although the architect through his recollections tried to help plaintiff clarify its position.

Both parties filed motions for summary judgment pursuant to Rule 56, Fed.R. Civ.P., both claiming that there is no dispute as to any material fact and that they are entitled to judgment as a matter of law. The motions were based upon the pleadings, plaintiff's request for admissions and defendant's response thereto, and the deposition taken of the architect. An affidavit was also filed by Juan N. Torruella to the effect that he was attorney in fact of the defendant bonding company and that at no time was he aware that Mr. de la Uz was

acting as mediator or arbitrator or that the company was submitting itself to arbitration. Both motions for summary judgment were denied. The court apparently determined that as a minimum requirement the person who acts as arbitrator must be aware of the fact that he is acting as such in order to grant the parties before him the rights and opportunities provided for in the Puerto Rico Arbitration Act. The court found:

> In the present case we have the peculiar situation of a person purportedly acting as arbiter who in a deposition taken, stated under oath that he was not aware that he had been presiding the meetings in which the arbitration hearings were supposed to be taking place.

On the basis of such finding, the court proceeded to determine:

> We find that in the present case the arbiter has committed an error which could have impaired the rights of the parties and, as such, there is sufficient cause under Title 32, Laws of Puerto Rico Annotated, Section 3222(c) to remand this case so that a new hearing be held in accordance with the provisions of the contract between the parties. Any provision in said contract as to the terms in which the parties may apply for arbitration, and any other subsequent terms as to the arbitration procedure shall be considered applicable and the first such date shall begin from the date of the court order.

> Wherefore, plaintiff's motion for summary judgment is hereby denied, as is defendant's motion for summary judgment. This case shall be dismissed until the arbitration award is rendered. Once the arbitration award is rendered the parties may resort to this Court for any further remedies they may deem necessary.

Plaintiff as a basis for reversal urges:

(1) The court misconstrued the deposition of the architect when it held that he was unaware of his position as arbitrator.

(2) The architect's decision contained in his letters of April 10 and August 13, 1974,

was rendered pursuant to the contract between the parties and is final and binding.

(3) No basis exists under the laws of Puerto Rico for vacating the architect's award under the facts of this case.

We reverse the trial court's judgment and remand with direction to sustain plaintiff's motion for summary judgment for the reasons hereinafter set out.

The issues above stated are closely related and will be considered together. The trial judge determined that the arbitration law of Puerto Rico applies and stated such law to be as follows:

"Section 1 of the Arbitration Law of Puerto Rico (32 L.P.R.A. 3201), provides:

> 'Two or more parties may agree in writing to submit to arbitration, in conformity with the provisions of this chapter, any dispute which may be the object of an existing action between them at the time they agree to the arbitration; or they may include in a written agreement a provision for the settlement by arbitration of any dispute which may in future arise between them from such settlement or in connection therewith. Such an agreement shall be valid, requirable and irrevocable except for the grounds prescribed by law for the reversal of an agreement.'

"Section 22 (32 L.P.R.A. 3222) of the above mentioned Act, provides:

> 'In any of the following cases the court may, on petition of any of the parties and upon notice and hearing, issue an order reversing the award:

> \*    \*    \*    \*    \*    \*

> '(c) When the referees are in error in refusing to postpone the hearing after just cause therefor was shown, or in refusing to hear relevant and material evidence in the dispute, *or when they commit any other error impairing the rights of any of the parties.*'"

We assume that the following statement by the district court correctly states the governing law.

> "In the Puerto Rican jurisdiction it has been consistently held that the reversal

and modification or correction of an arbitration award may only be decreed when the grounds provided in the statute, part of which we have just quoted, are present. *P. R. Housing Authority v. Superior Ct., Zequeira, Int.*, 82 P.R.R. 333 (1961). It has also been held that judicial review of the merits of the arbitration award is not authorized. *Id.* In this regard, the Puerto Rican laws accord the courts the same role that they have under the Federal Arbitration Act, Title 9, United States Code, Section 1, et seq. See *Shahmoon Industries, Inc. v. United Steelworkers of America, AFL–CIO*, 263 F.Supp. 10 (DC NJ 1966). See, also, *Saxis S. S. Co. v. Multifacs Intern. Traders, Inc.*, 375 F.2d 577 (CA NY 1967); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805 (CA NY 1960), cert. den. 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727; *Local 719, American Bakery and Confectionery Workers of America, AFL–CIO v. National Biscuit Co.*, 252 F.Supp. 768, aff'd 378 F.2d 918."

■ We disagree, however, with the court's determination that Mr. de la Uz was not aware of the fact that he was acting as arbitrator. We have carefully examined the record as a whole, including the architect's deposition and his written decision, and are convinced that the architect understood the duties imposed upon him by the contract and that he performed the duties in a proper manner. The trial court's determination that the architect was not aware of the fact that he was acting as an arbitrator lacks legal support under the undisputed facts as hereinabove stated.

Defendant's contention that the architect's determination is void on the ground it did not agree to his so acting lacks merit. Defendant is bound by the contractual provisions which unambiguously provide that the architect shall make the determination on the issue involved. Defendant's contention that it had no proper notice of the hearing, in light of the undisputed facts, also lacks merit. As hereinabove set out, the architect's deposition discloses defendant's representation at the proceedings and further discloses that a full opportunity was afforded defendant to present any desired evidence or contention. The architect at no time refused to consider or receive any evidence which the defendant might offer. The architect's statement in the deposition, *supra*, that he gave everyone a chance to refute plaintiff's claim and to do whatever had to be done has not been denied by affidavit or otherwise in the record. The architect as the drawer of the plans and specifications and as the inspector of the progress of the building had considerable personal knowledge with respect to the claims in controversy which he was entitled to use in making his determination. As heretofore noted, defendant had been given an itemized statement of plaintiff's claim.

■ More significantly, a separate and independent ground for a reversal exists. Part 7.10 of the contract, *supra*, expressly provides that a party dissatisfied with the architect's award may invoke additional arbitration proceedings in accordance with the rules of the American Arbitration Association upon the filing of a timely demand for such arbitration with the other party to the contract. Paragraphs 7.10.2 and 2.2.11, both set out *supra*, unambiguously provide a means by which such additional arbitration can be accomplished.

Defendant thus had a right to obtain a full new arbitration of the claim by filing appropriate notice within thirty days of the architect's final decision. No such notice was ever served. By the express terms of the contract, the architect's decision became final upon defendant's failure to file the required notice within thirty days of the architect's decision.

The judgment is reversed. This case is remanded to the district court with direction to enter summary judgment for the plaintiff upon the architect's award.